( UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

PATRICIA LIZARRAGA,

:    08 CV Civ 01732
:    (ECF)

Plaintiff,                                                    :

:    **COMPLAINT**

-against-                                                      :

:    Plaintiff Demands A
CALYON SECURITIES (USA), INC.,                 :    Trial By Jury

:
Defendant.                                                   :
-------------------------------------------------------------- X

Plaintiff, Patricia Lizarraga ("Lizarraga"), by her attorneys, Siegel &.

Robinson, L.L.P., for her Complaint against Calyon Securities (USA), Inc., alleges as

follows:

## THE PARTIES

1.      Lizarraga is a female residing at 952 Fifth Avenue, New York,

New York 10075.  Lizarraga was employed by Calyon Securities (USA), Inc. from

October 5, 2000 until May 10, 2007.

2.      Upon information and belief, Calyon Securities (USA), Inc.

("Calyon") is the corporate and investment banking subsidiary of the French bank Credit

Agricole, with its principal place of business at 1301 Avenue of the Americas, New

York, New York 10019.

## THE NATURE OF THE ACTION

3.      This is a civil action for damages and remedies brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); the Fair Labor Standards Act of 1938 § 6(d), as amended, 29 U.S.C. § 206(d) ("Equal Pay Act"); the New York State Executive Law § 296 et seq. ("New York State Human Rights Law"); the New York State Labor Law § 194(1) ("New York State Equal Pay Law"); the Administrative Code of the City of New York § 8-101 et seq. ("New York City Human Rights Law"); and the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action under 28 U.S.C. § 1331, and the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

5.      On December 11, 2006, Lizarraga filed with the Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination ("Charge"), based on sex, pregnancy, and retaliation.

6.      On June 4, 2007, Lizarraga filed with the EEOC an Amendment to the Charge.

7.      On or about December 22, 2007, Lizarraga received a Notice Of Right To Sue letter from the EEOC.

8.      Lizarraga served copies of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel prior to filing it in this Court.

2

9.    Venue is proper in this district under 28 U.S.C. § 1391(b) because Calyon's principal place of business is located in New York and Lizarraga worked in New York, where discriminatory conduct occurred.

## FACTS

10.    On October 5, 2000, Lizarraga began her employment with Calyon. Lizarraga was first employed in Calyon's New York Global Investment Banking Group ("GIB") as a Vice-President.

11.    Throughout the course of her Calyon employment, Lizarraga was well qualified for the positions she held, and performed her duties in a professional and competent manner.

12.    Calyon promoted Lizarraga to Director in early 2004.

13.    During 2005, Lizarraga originated the most lucrative mandate for GIB Americas in 2006, which paid significant retainers during 2005, and constituted the majority of the U.S. revenue base for the year 2006.

14.    In early 2005, Calyon promoted Lizarraga to Managing Director of its Corporate Finance and Advisory Group in New York and its Mergers and Acquisitions Group, based in Paris (the "M&A Group").

15.    In April 2005, Lizarraga became pregnant. On January 6, 2006, Lizarraga began her maternity leave. On January 9, 2006, she gave birth to a daughter, Alejandra Sarah.

16.    Despite Plaintiff's qualifications, and positive performance, once Calyon learned Lizarraga was pregnant, Calyon began to criticize her and treat her less favorably because of her sex and pregnancy. Among other things, Calyon denied

Lizarraga opportunities for increased incentive compensation and professional advancement made available to comparable male employees.

17.    Plaintiff was scheduled to remain on maternity leave until March 31, 2006. During Plaintiff's leave, however, Chris Kelly, the Chief Operating Officer of GIB, Americas Coordinator, and as of 2005, one of Lizarraga's two direct supervisors, pressured her to prove she was a "team player," and directed that she make a trip to Paris as soon as possible. Kelly advised Plaintiff that making the trip was necessary for her to secure career advancement at Calyon. Lizarraga's maternity leave was ultimately cut short when, on February 22, 2006, she traveled to Paris.

18.    Just after Lizarraga returned to Calyon from maternity leave, she participated in Calyon's yearly performance review process. As part of this exercise, Calyon requests that employees state the goals they would like to achieve at Calyon in the coming year. Lizarraga expressly informed Calyon of her desire to be promoted to a Sector Head position.

19.    On March 6, 2006, Lizarraga received her 2005 fiscal year performance review. Calyon rated her global professional skill rating as "competent" and gave her a two rating on a five-point scale. This marked a significant reduction from the preceding two years when Calyon had rated Plaintiff's performance as "outstanding," with her receiving five out of five points from her superiors.

20.    Kelly wrote on Plaintiff's 2005 fiscal year performance review that Plaintiff needed to "try to rein in emotions and stay level headed and calm even in difficult, stressful situations."

21.    At the same time, Calyon also informed Lizarraga that her incentive compensation for fiscal year 2005 would be $30,000. This incentive compensation award was $20,000 less than the prior year, and $110,000 less than two years earlier — both of which were paid prior to Lizarraga's promotion to Managing Director.

22.    Lizarraga spoke to Kelly concerning her low incentive compensation payment and performance review. Kelly told Lizarraga "[y]our bonus was a signal" and told her that she should think about why she was still working at Calyon.

23.    Kelly's derisive attitude toward Lizarraga, as set forth above, contrasted with the respectful attitude he displayed toward her male peers.

24.    Through the remainder of Plaintiff's employment, Kelly continued to belittle Lizarraga and treat her differently than her male peers.

25.    Later in Spring 2006, Gilles de Dumast, the Global Head of Investment Banking, stated in a department meeting that Lizarraga attended that Calyon's open Head of Investment Banking for New York position would be filled by a man "because there are no senior women on Wall Street." This comment is emblematic of Defendant's firm culture of favoring of men over women, especially with respect to those in senior positions.

26.    In September 2005, a position as Head of Corporate Finance & Advisory for New York became available. Plaintiff was well qualified for this position, and was the most senior professional in the Corporate Finance Group in New York at the time. In October 2006, however, Calyon announced that it had filled this position with a

male, comporting with the statement de Dumast had made the Spring before. The male Calyon selected to fill the Head position was less qualified than Lizarraga.

27.    Calyon continued to marginalize Lizarraga during 2006 and undermine her professional standing at the firm. Kelly wrote in Plaintiff's 2005 performance appraisal that she should "strive for ever closer links with [the] Paris teams and [to] be a leader in helping to reintegrate [the investment bankers in the Latin American groups] into that effort." Towards that end, Lizarraga made in the course of performing her job duties a proposal concerning restructuring the New York GIB team to mirror the structure of the Paris GIB team. On or about October 24, 2006, Lizarraga distributed a memorandum that memorialized a prior verbal proposal she had made that had received favorable reviews. The day after she distributed the memorandum, however, Lizarraga's supervisors attacked her and it during a meeting with the entire GIB team. Kelly, Lizarraga's supervisor, further attacked her thereafter, making gender and non-fact based comments to her. Kelly called Lizarraga "pathetic and vain." He told her he "question[ed] anyone who would give [her] a mandate." He told Lizarraga he didn't understand what she was still "doing at" Calyon and that "nobody like[d] [her]," including himself, Francois Pages, the Chief Executive Officer of Calyon, who served as Lizarraga's other direct supervisor, and de Dumast.

28.    On October 30, 2006, Lizarraga complained to Donna Hayes of Calyon's Human Resources Department that Calyon and her supervisors were discriminating against her on the basis of her sex, pregnancy, and the fact that she took maternity leave. Hayes responded by stating that there was "no law against rude and abusive behavior," only against sexual discrimination.

29.     Upon information and belief, Plaintiff's supervisors were promptly made aware that she had complained of discrimination to Calyon's Human Resources Department.

30.     After Plaintiff complained to Defendant's Human Resources Department, Lizarraga's supervisors retaliated, by among other things attacking routine proposals she made during the course of performing her job as a Managing Director.

31.     On November 10, 2006, Kelly and de Dumast retaliated against her in a coordinated fashion.  On that date, de Dumast sent Lizarraga an e-mail in response to a proposal she made to establish a mechanism to increase communication between Calyon Sector Heads and U.S. Senior Bankers.  de Dumast copied Kelly and Pages on the e-mail.  Among other things, de Dumast wrote "please focus on doing your job not on brainstorming about it please focus on your job not on everyone else's and please, do your job, not that of Gilbert [de la Ferriere]."

32.     Three hours later, Kelly sent Lizarraga an e-mail in response to a separate marketing proposal Lizarraga made on November 3, 2006.  Kelly attacked Lizarraga's proposal, stating among other things that "Once a decision is made, you should follow it; to do otherwise is not a sign of commercial aggressiveness, but rather of insubordination and a lack of discipline."  Kelly copied Gilbert de la Ferriere, Pages and de Dumast on the e-mail.

33.     Three days after Kelly attacked Lizarraga's proposal, however, Pages, her other supervisor, told her to move ahead with it in a "submarine" fashion — without the Paris office (i.e., Mr. Kelly) knowing — since the project had clear business

merit and a high fee potential. Lizarraga thus faced conflicting directives from her two direct supervisors.

34.    On November 16, 2006, Lizarraga met Hayes for a second time. Hayes told Lizarraga that she had investigated her complaint and found that there was "no discrimination in compensation after pregnancies" at Calyon. Hayes also advised Lizarraga that she had spoken with Kelly and Pages and learned that Lizarraga might get terminated for insubordination. Hayes then offered to mediate the dispute she perceived between Lizarraga and her Calyon superiors.

35.    Upon information and belief, Defendant took no action to stop the discrimination and retaliation of Lizarraga or to effectuate discipline of the individuals who had mistreated her. In fact, the discriminatory and retaliatory treatment of Lizarraga continued.

36.    On December 11, 2006, Lizarraga filed her Charge of Discrimination with the EEOC, stating that she had been discriminated against because of her sex and pregnancy, and retaliated against. It described some of the discrimination detailed here.

37.    Calyon's discriminatory and retaliatory treatment of Lizarraga continued after it learned that Lizarraga had filed her charge with the EEOC.

38.    Throughout December 2006 and January 2007, Calyon excluded Lizarraga from key meetings and other events regarding an important potential merger and acquisition transaction called "Project Bloom." notwithstanding the fact that Lizarraga was the Managing Director who originated it in or about May 2006. Lizarraga repeatedly asked to be included, to no avail. By example, on December 22, 2006, she e-

mailed Pages and asked him to intervene to "stop this ... exclusionary behavior." Neither Pages nor Calyon ever did.

39.    Lizarraga sent a courtesy copy of her December 22 e-mail to Pages to Mischa Zabotin, Head of Calyon's Financial Sponsor Group. Zabotin responded by e-mail, telling Lizarraga: "Once you start (sic) telling us about your calls with all your best friends at various sponsors before or after you make them, we might be able to work differently with you. If (sic) find your behavior unacceptable and am not inclined to put you in front of our clients as things sta (sic) today, maz."

40.    Calyon further marginalized Lizarraga and undermined her professional standing. It diminished her managerial responsibilities, not even allowing her to review her Administrative Assistant, Vera Perez, as she had done during the prior fiscal year.

41.    On or about January 18, 2007, Calyon gave Lizarraga a poor 2006 Annual Appraisal ("Annual Appraisal"), ranking her "skills" to be "2-Partly satisfactory" and her "individual performance and contribution" to be "2-Partly satisfactory," despite the fact that she: (1) was the only Managing Director in the Corporate Finance & Advisory/Mergers & Acquisitions Group in the Americas to reach his or her revenue goals, and (2) originated the Project Bloom deal. Negative comments in the performance review include:

> [w]hile Patricia has clearly strong commercial and marketing skills, as well as a lot of enthusiasm, she has a regular tendency to become very unreasonable on projects and new ideas with difficulties to understand others view points and positions.

42.    Lizarraga's overall ranking for 2006 was the lowest ranking that Calyon had ever given her.

43.    On February 22, 2007, Calyon informed Lizarraga that it would pay her $30,312 in incentive compensation. Lizarraga's 2007 incentive compensation award constituted only a $312 increase from the 2006 amount Calyon paid her, notwithstanding a tremendous increase in the revenues Lizarraga originated as compared to the prior year.

44.    On February 26, 2007, Plaintiff met with Pages and expressed to him her dissatisfaction with the amount of her incentive compensation. Pages claimed that Plaintiff's 2006 performance was poor.  After Plaintiff reminded Pages of highlights of her 2006 performance, he partially retracted his position, stating that he had noticed that in the last few months Plaintiff was "less confrontational, working harder, and less emotional."

45.    Calyon's    discriminatory    and    retaliatory    actions    continued throughout the Spring of 2007, resulting in Lizarraga being excluded and shunned. Management refused to include her in discussions concerning both ongoing and potential transactions, instead working with employees junior to her.   For example, Calyon excluded Lizarraga from: (1) an off-site meeting held by Calyon's Financial Sponsors Group, which was critical for Lizarraga to attend in order to perform her job function, and (2) another important deal called "Project Knight" (instead selecting two less qualified male employees to perform Plaintiff's job functions).

46.     During this time, Kelly also promoted a less qualified and junior male employee to a Sector Head position that Plaintiff was qualified for, and expressed interest in.

47.     Upon information and belief, Calyon had no female Sector Heads during 2006.

48.     As a result of Calyon's foregoing actions, Plaintiff was compelled to resign from her employment with Calyon on May 10, 2007.

49.     As set forth in this Complaint, Defendant treated Lizarraga differently than her male peers.  Lizarraga's superiors and Calyon undermined her ability to perform her job by, among other things: (a) ridiculing and belittling her; (b) excluding and isolating her from participating in meetings, work-related outings, and important transactions; and (c) making sexist remarks about her and in her presence.   Upon information and belief, Calyon took none of these actions with regard to Lizarraga's male peers.

50.     Calyon took these actions against Lizarraga because she is a woman and because she became pregnant, took maternity leave, gave birth to a child, and later complained of discriminatory conduct.

51.     Upon information and belief, the incentive compensation Lizarraga received for fiscal years 2005 and 2006 was significantly less than that provided to male employees for substantially equal work in positions requiring equal skill, effort and responsibility and performed under similar working conditions as that of Lizarraga.

52.     As a result of Calyon's actions, Lizarraga suffered damages, including, but not limited to, loss of compensation, stress, anguish, and humiliation.

**FIRST CLAIM**
**(Sex and Pregnancy Discrimination in Violation of Title VII)**

53.    Lizarraga repeats and realleges the allegations contained in paragraphs 1 through 52, as if separately set forth herein.

54.    At all relevant times, Lizarraga was an "employee" of Defendant under Title VII, 42 U.S.C. § 2000e(f).

55.    Defendant is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

56.    By its actions detailed above, Defendant has unlawfully discriminated against Lizarraga on the basis of her sex, pregnancy, and childbirth, in violation of 42 U.S.C. § 2000e-2(a).

57.    Defendant's conduct toward Lizarraga constituted willful discrimination because of Lizarraga's sex, pregnancy and childbirth.

58.    Upon information and belief, Calyon's management was aware of the aforementioned discriminatory employment practices taken against Plaintiff, knowingly participated in such discriminatory practices and actions, and failed to take remedial action to correct these abuses.  As such, Calyon engaged in the aforementioned discriminatory practices and actions with malice and/or reckless indifference to plaintiffs' rights under Title VII.

59.    As a result of Defendant's discrimination, Lizarraga suffered substantial damages, including lost wages and benefits, in an amount as yet undetermined.

**SECOND CLAIM**
**(Sex and Pregnancy Discrimination Under**
**the New York State Human Rights Law)**

60.    Lizarraga repeats and realleges the allegations contained in paragraphs 1 through 59, as if separately set forth herein.

61.    At all relevant times, Lizarraga was an "employee" for purposes of § 296 of the New York State Human Rights Law.

62.    Defendant is an "employer" for purposes of § 292 of the New York State Human Rights Law.

63.    By its actions detailed above, Defendant has unlawfully discriminated against Lizarraga on the basis of her sex, pregnancy and childbirth, in violation of the New York State Human Rights law.

64.    Upon information and belief, Defendant's conduct towards Lizarraga constitutes willful discrimination.

65.    As a result of Defendant's unlawful conduct, Lizarraga has suffered substantial damages, including emotional pain and mental anguish, in an amount as yet undetermined.

**THIRD CLAIM**
**(Sex and Pregnancy Discrimination Under**
**the New York City Human Rights Law)**

66.    Lizarraga repeats and realleges the allegations contained in paragraphs 1 through 65, as if separately set forth herein.

67.    Lizarraga is a "person" under § 8-102(1) of the New York City Human Rights Law.

68.    Defendant is an "employer" subject to the provisions of the New York City Human Rights Law under § 8-102(5) of the Administrative Code.

69.    By its actions detailed above, Defendant has unlawfully discriminated against Lizarraga on the basis of her sex, pregnancy and childbirth, in violation of the New York City Human Rights Law.

70.    As a result of the discrimination described above, Lizarraga has suffered substantial damages, including emotional distress and mental anguish, in an amount as yet undetermined.

71.    Upon information and belief, Defendant's discriminatory conduct was taken with reckless indifference to Plaintiff's rights, entitling her to punitive damages under the New York City Human Rights Law.

### FOURTH CLAIM
### (Violation of Equal Pay Act)

72.    Lizarraga repeats and realleges the allegations contained in paragraphs 1 through 71, as if separately set forth herein.

73.    Lizarraga is an "employee" pursuant to the Equal Pay Act.

74.    Defendant is an "employer" subject to subject to the provisions of the Federal Equal Pay Act under 29 U.S.C. §§ 203(d) and 206.

75.    By its actions detailed above, Defendant has unlawfully discriminated against Plaintiff on the basis of her sex in violation of the Federal Equal Pay Act.

76.    Upon information and believe, Defendant's discrimination of plaintiffs was willful.

77.    By reason of the foregoing, Plaintiff suffered damages in an amount as yet undetermined.

## FIFTH CLAIM
### (Violation of the New York State Equal Pay Law)

78.    Lizarraga repeats and realleges the allegations contained in paragraphs 1 through 77, as if separately set forth herein.

79.    At all relevant times, Lizarraga was an "employee" of Defendant for purposes of the New York State Equal Pay Law under the New York Labor Law §§ 190(2) and 194.

80.    Defendant is an "employer" for purposes of the New York State Equal Pay Law under New York Labor Law §§ 190(3) and 194.

81.    By its actions detailed above, Defendant unlawfully discriminated against Plaintiff on the basis of her sex in violation of the New York State Equal Pay Law.

82.    Upon information and belief, Defendant's discrimination of Plaintiff was willful.

83.    By reason of the foregoing, Plaintiff suffered damages in an amount as yet undetermined.

## SIXTH CLAIM
### (Retaliation Under Title VII)

84.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 83, as if separately set forth herein.

85.    Plaintiff opposed Defendant's unlawful, discriminatory employment practices and engaged in protected activity under Title VII.  Among other things, Plaintiff asserted that she was being discriminated against in complaints she made to Defendant's agents, including Hayes, and filed a Charge of Discrimination with the EEOC on December 11, 2006.

86.    Calyon retaliated against Lizarraga for having engaged in the protected activity.

87.    Defendant's actions constitute discrimination and retaliation against Plaintiff in violation of Title VII, 42 U.S.C. § 2000e-3.

88.    As a result of Defendant's retaliation, Plaintiff has suffered substantial damages, including lost wages and benefits and emotional distress, in an amount as yet undetermined.

89.    Upon information and belief, Defendant's retaliation was engaged in with malice and/or reckless indifference to Lizarraga's federally protected rights.  Plaintiff is therefore entitled to punitive damages under Title VII.

## SEVENTH CLAIM
### (Retaliation Under the New York State Human Rights Law)

90.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 89, as if separately set forth herein.

91.    Lizarraga    opposed    Defendant's    unlawful,    discriminatory employment practices and engaged in protected activity under the New York State Human Rights Law.  Among other things, Plaintiff asserted that she was being discriminated against in complaints she made to Defendant's agents, including Hayes, and filed a Charge of Discrimination with the EEOC on December 11, 2006.

92.    Calyon retaliated against Lizarraga for having engaged in the protected activity.

93.    Defendant's actions constitute discrimination and retaliation against Plaintiff in violation of the New York State Human Rights Law, § 296.

94.    As a result of Defendant's retaliation, Plaintiff has suffered substantial damages, including but not limited to mental distress and lost wages and benefits, in an amount as yet undetermined.

## EIGHTH CLAIM
### (Retaliation Under the New York City Human Rights Law)

95.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 94 as if separately set forth herein.

96.    Plaintiff opposed Defendant's unlawful, discriminatory employment practices and engaged in protected activity under the New York City Human Rights Law.

Among other things, Plaintiff asserted that she was being discriminated against in complaints she made to Defendant's agents, including Hayes, and filed a Charge of Discrimination with the EEOC on December 11, 2006.

97.    Defendant retaliated against Lizarraga for having engaged in the protected activity.

98.    Defendant's actions constitute discrimination and retaliation against Plaintiff in violation of the New York City Human Rights Law, § 8-107.

99.    As a result of Defendant's retaliation, Plaintiff has suffered substantial damages, including but not limited to mental distress and lost wages and benefits, in an amount as yet undetermined.

100.    Upon information and belief, Defendant's retaliatory actions against Plaintiff were taken with reckless indifference to Plaintiff's rights, entitling her to punitive damages under the New York City Human Rights Law.


### NINTH CLAIM
**(Violation of the Family and Medical Leave Act)**

101.    Lizarraga repeats and realleges the allegations contained in paragraphs 1 through 100, as if separately set forth herein.

102.    Plaintiff is a female citizen of the United States and was an "employee" of defendant within the meaning of 29 U.S.C.A. § 2611(2)(A) at all times relevant to this action.

103.    Defendant was an "employer" within the meaning of 29 U.S.C.A. § 2611(4)(A) at all times relevant to this action.

18

104. Plaintiff timely requested a leave of absence from Defendant permitted under the Family and Medical leave Act ("FMLA").

105. On January 6, 2006, Plaintiff commenced a leave of absence due to the birth of her daughter.

106. Defendant denied Plaintiff the benefits to which she was entitled by interfering with her leave of absence.

107. Defendant treated Plaintiff adversely because she requested a leave of absence and took a portion of the leave of absence she was entitled to under the FMLA.

108. Defendant discriminated and retaliated against Plaintiff because she took a leave of absence.

109. As a proximate result of Defendant's discrimination against Plaintiff on the basis of her exercise of rights under the FMLA, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, and other employment benefits.

110. As a further proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation.

111. As a further proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A.    On the First Claim, back pay and benefits and front pay and benefits in an amount as yet undetermined, plus compensatory damages and punitive damages to the maximum extent allowable by law, attorneys' fees, interest and costs;

B.    On the Second Claim, back pay and benefits and front pay and benefits in an amount at yet undetermined, plus compensatory damages, interest and costs;

C.    On the Third Claim, back pay and benefits and front pay and benefits in an amount as yet undetermined, plus compensatory damages and punitive damages to the maximum extent allowable by law, attorneys' fees, interest and costs;

D.    On the Fourth Claim, back pay in an amount as yet undetermined (including benefits and wage supplements), compensatory damages and liquidated damages to the maximum extent allowable by law, attorneys' fees, interest and costs;

E.    On the Fifth Claim, back pay in an amount as yet undetermined (including benefits and wage supplements), compensatory damages and liquidated damages to the maximum extent allowable by law, attorneys' fees, interest and costs;

F.    On the Sixth Claim, back pay and benefits and front pay and benefits, plus compensatory and punitive damages, attorneys' fees, costs and interest, all in amounts to be determined at trial;

G.    On the Seventh Claim, back pay and benefits and front pay and benefits, plus compensatory damages, costs and interest, all in amounts to be determined at trial;

H.    On the Eighth Claim, back pay and benefits and front pay and benefits, plus compensatory and punitive damages, attorneys' fees, costs and interest, all in amounts to be determined at trial;

I.    On the Ninth Claim, back pay and benefits and front pay and benefits, plus an order enjoining Defendant from engaging in the wrongful practices alleged herein, and attorneys' fees, costs and interest, all in amounts to be determined at trial; and

J.    Such other and further relief as the Court deems appropriate under the circumstances.

Dated:    New York, New York
          February 21, 2008

                                   LIDDLE & ROBINSON, L.L.P.

                                   By: _____
                                       David I. Greenberger
                                       Andrea M. Paparella
                                   800 Third Avenue
                                   New York, New York 10022
                                   (212) 687-8500
                                   dgreenberger@liddlerobinson.com
                                   apaparella@liddlerobinson.com
                                   Attorneys for Plaintiff